UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AUGUSTUS MOORE,

                            Plaintiff,

    v.

WESTCHESTER COUNTY, *et al.*,

                            Defendants.

No. 18-CV-7782 (KMK)

OPINION & ORDER

Appearances:

Augustus Moore
Valhalla, NY
*Pro Se Plaintiff*

Melissa-Jean Rotini, Esq.
Mondaire L. Jones, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

Mony B.P. Yin, Esq.
Thomas J. Bracken, Esq.
Bennett, Bricklin & Saltzburg, LLC
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Augustus Moore ("Plaintiff"), a pretrial detainee at Westchester County Jail, brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Westchester County, Commissioner Joseph K. Spano ("Spano"), Deputy Commissioner Leandro Diaz ("Diaz"), Assistant Wardens Francis Delgrosso ("Delgrosso") and Karl Vollmer ("Vollmer"), Law Librarian K. Hewitt ("Hewitt"), Aramark Correctional Services ("Aramark"), and Aramark Food Service Director Manuel Mendoza ("Mendoza") (collectively, "Defendants"), alleging that Defendants provided him with

substandard and unhygienic food, in violation of the Fourteenth Amendment, and denied his access to the courts, in violation of the First Amendment. (*See generally* Compl. (Dkt. No. 2).) Before the Court is Defendants' Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Not. of Mot. (Dkt. No. 24).) For the following reasons, the Motion is granted.

## I. Background

### A. Factual History

The following facts are drawn from Plaintiff's Complaint and are assumed true for purposes of resolving the instant Motion.

Plaintiff alleges that, since his arrival at Westchester County Jail on May 8, 2018, he has been provided with substandard and unhygienic food. (Compl. 6.)[1] In particular, Plaintiff alleges that, because "supervisory Defendants" (who are unnamed) "do not properly train or supervise" the inmates responsible for preparing the meals, the meat has arrived "cold, undercooked, . . . raw[,] and pink"; there are "[b]ugs in the food"; the meal trays are "improperly cleaned" and have "mold" and "leftover food" on them; and, because those preparing the food "do not wear hair nets, beard nets[,] [or] gloves," there is "human hair" in the food. (*Id.*) When Plaintiff "informed [his] officer" (who is unnamed) about the food problem, he was told "to cook it in the microwave." (*Id.*) On one occasion, Plaintiff "ate old [chili] and beans, [which] was a gathering of old foods served throughout the week," and thereafter became ill with "vomiting, nausea, [and] diarrhea, [which] required medical attention." (*Id.* at 6–7.) On another occasion, Plaintiff ate "undercooked [r]aw and pink" chicken, after which he suffered "explosive

---

[1] Plaintiff's filings do not use consistent pagination. To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

2

[diarrhea]." (*Id.* at 7.)  Plaintiff alleges that, in addition to the above symptoms, he has experienced "constant headaches, fatigue . . . , stomach cramps, weight loss, stretch marks, dehydration, [and] constipation."  (*Id.* at 8.)

On June 13, 2018, Plaintiff "attempted" to file a grievance regarding the food problem at Westchester County Jail with Sergeant Hogue (not named as a Defendant), but Hogue refused to accept the grievance and told Plaintiff to mail it to Donna Blackman (not named as a Defendant), who handles grievances related to Aramark.  (*Id.* at 6.)  Plaintiff did so, but received no response.  (*Id.*)  On August 20, 2018, Plaintiff filed a second grievance with Sergeant Conkling (not named as a Defendant), who similarly told him that he knew Plaintiff had heard that "we do not handle Aramark grievances."  (*Id.* at 7.)  Finally, Plaintiff alleges that when he asked Hewitt, the law librarian, for a § 1983 complaint form — presumably to file suit regarding the food problem — she refused to give him one pursuant to a policy established by Hewitt, Vollmer, and Delgrosso, which "considers" the forms "contraband."  (*Id.*)

B.  Procedural History

The initial Complaint was filed on August 23, 2018.  (Compl. (Dkt. No. 2).)  On September 27, 2018, the Court granted Plaintiff's request to proceed in forma pauperis ("IFP").  (Dkt. No. 4.)  Defendants filed the instant Motion To Dismiss on February 14, 2019.  (Not. of Mot. (Dkt. No. 24); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 25).)  Plaintiff did not file a response in opposition.  On May 24, 2019, the Court granted Defendants' request to consider the Motion fully submitted.  (Dkt. No. 28.)

II. Discussion

The Court construes Plaintiff as bringing claims of denial of access to the courts, in violation of the First Amendment, and of substandard and unhygienic conditions of confinement,

in violation of the Fourteenth Amendment.

Defendants argue that Plaintiff fails to state an access-to-courts claim; that Plaintiff's conditions-of-confinement claim as to Westchester County, Aramark, and the individual Defendants in their official capacities fail because Plaintiff has not established *Monell* liability; that Plaintiff fails to establish the personal involvement of the individual Defendants in a constitutional violation; and that, on the merits, Plaintiff fails to state a conditions-of-confinement claim. (Defs.' Mem. 9–17, 19–20.)[2] The Court addresses each argument separately to the extent necessary.

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

---

[2] To the extent Defendants also claim to make a qualified immunity "argument," (Defs.' Mem. 17–18), they merely restate the qualified immunity caselaw without meaningfully applying it to the facts of the case. Accordingly, the Court declines to consider at this time whether Defendants are protected by qualified immunity.

4

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

B. Analysis

1. Access-to-Courts Claim

Defendants argue that Plaintiff fails to plausibly state a claim that he was denied his First Amendment right of access to the courts. (Defs.' Mem. 19–20.)

"To state a claim for denial of access to the courts . . . [,] a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citation, alteration, and quotation marks omitted). "[A] plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in *actual injury* to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (emphasis added) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Actual injury includes "claims that systemic official action

frustrates a plaintiff . . . in preparing and filing suits at the present time," and "claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002) (collecting examples within each category). "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik*, No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).

Here, Plaintiff alleges that Hewitt, the Westchester County Jail law librarian, refused to provide Plaintiff with a § 1983 complaint form on grounds that a policy (allegedly established by Hewitt, Vollmer, and Delgrosso) considered such forms "contraband." (Compl. 7.) Yet, Plaintiff also alleges that he received a § 1983 form from "another inmate" who had an "extra [one] hidden." (*Id.*) The Court takes seriously Plaintiff's allegation that prison officials have obstructed his access to legal forms. However, as Defendants argue, (Defs.' Mem. 20), because Plaintiff was able to file the instant Action, Plaintiff has failed to allege an actual, as opposed to hypothetical, injury caused by Hewitt's alleged conduct. Moreover, to the extent Plaintiff's allegation is that Hewitt caused him to be delayed in filing the instant Action, "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis*, 320 F.3d at 352 (citation and quotation marks omitted). Accordingly, Plaintiff's access-to-courts claim must be dismissed. *See Edwards v. Annucci*, No. 19-CV-254, 2019 WL 3213523, at *6 (N.D.N.Y. July 17, 2019) (dismissing access-to-courts claim where "the amended complaint fail[ed] to plausibly allege that [the plaintiff] suffered any prejudice from the loss of [court] documents"); *Tutora v. Gessner*, No. 17-CV-9517, 2019 WL 1382812, at *5 (S.D.N.Y. Mar. 27, 2019) (collecting cases dismissing access-to-courts claims where no showing of actual injury was made); *Rasheen v. Adner*, 356 F. Supp. 3d 222, 235

(N.D.N.Y. 2019) ("[B]y filing this . . . complaint . . . , [the plaintiff's] actions directly contradict his claim that he was denied access to the courts.").

### 2. *Monell* Liability

Defendants argue that, as to the remaining Fourteenth Amendment conditions-of-confinement claim, Plaintiff fails to establish *Monell* liability as to Westchester County, Aramark, and the individual Defendants in their official capacities. (Defs.' Mem. 9–12.)

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–691). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, Plaintiff does not allege facts plausibly suggesting the existence of a formal policy,

8

a specific action taken or decision made by a municipal policymaking official, or a practice so widespread that it practically has the force of law. Rather, Plaintiff summarily alleges that "supervisory Defendants" — who are unnamed — "do not properly train or supervise" the inmates preparing the meals. (Compl. 6.) This allegation is conclusory. To state a *Monell* claim based on a failure to train, a plaintiff must "allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015). And to state a *Monell* claim based on a failure to supervise, a plaintiff must allege "(1) [that] there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) [that] the municipality consistently failed to investigate those allegations." *Treadwell v. County of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) (citation omitted). Here, Plaintiff fails to allege any specific deficiency in Westchester County or Aramark's food-preparation-related training, any pattern of allegations or unconstitutional conduct related to substandard or unhygienic food, or any failure to investigate those allegations or conduct. Put differently, the "mere claim" that Westchester County or Aramark "failed to train and supervise its staff is a 'boilerplate assertion' and is insufficient, without more, to state a *Monell* claim." *Dawson v. Westchester County*, No. 18-CV-7790, 2019 WL 3408899, **4 (S.D.N.Y. July 29, 2019) (citations and alterations omitted); *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *4 (S.D.N.Y. July 25, 2019) (dismissing *Monell* claim where the plaintiff alleged, in conclusory fashion, that Westchester County and Aramark officials were aware of food preparation problems at Westchester County Jail through prior lawsuits, inmate grievances, and daily meetings); *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *4–5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim regarding substandard and unhygienic food at Westchester

9

County Jail where the plaintiff did not allege any "factual indicia from which this Court could infer the existence of a policy or custom"); *Hoffstead v. Aramark Corr. Servs., LLC*, No. 18-CV-2381, 2019 WL 1331634, at *5 (S.D.N.Y. Mar. 25, 2019) (same); *Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (same); *see also Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *13 (S.D.N.Y. Mar. 30, 2018) (dismissing *Monell* claim regarding failure to serve kosher food where the plaintiff failed to allege facts about a custom or policy separate from the facts of his own case).

Accordingly, Plaintiff's claims against Westchester County and Aramark must be dismissed, as must his claims against the individual Defendants in their official capacities. *See Jackson*, 2019 WL 3338020, at *5–6 (dismissing claims against municipality and individual defendant in her official capacity where the plaintiff failed to plausibly allege *Monell* liability).

### 3. Personal Involvement

Defendants argue that Plaintiff fails to state the personal involvement of individual Defendants Spano, Diaz, or Mendoza in any constitutional violation. (Defs.' Mem. 12–14.)[3]

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133,138 (2d Cir. 2013) (citations omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference

---

[3] Because the Court has already dismissed Plaintiff's access-to-courts claim — the only claim brought as to Defendants Hewitt, Vollmer, and Delgrosso — it need not consider whether Plaintiff states the personal involvement of these Defendants.

10

> to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff does not name or identify Spano, Diaz, or Mendoza in the body of his Complaint. (*See generally* Compl.) Because Plaintiff does not make any substantive allegations as to these Defendants, he necessarily fails to state their personal involvement in any constitutional violation. *See Clay v. Lee*, No. 13-CV-7662, 2019 WL 1284290, at *4 (S.D.N.Y. Mar. 20, 2019) (collecting cases for the proposition that personal involvement is not established where the defendant's name appears only in the caption of the complaint). To the extent Plaintiff alleges that "supervisory Defendants" were responsible for the inadequate food, (Compl. 6), nonspecific allegations "that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (citation and quotation marks omitted); *see also Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018) ("A complaint that lumps all the defendants together . . . and provides no factual basis to distinguish their conduct fails to satisfy [Rule 8]." (citations, quotation marks, and some alterations omitted)). Accordingly, all claims against Spano, Diaz, and Mendoza in their individual capacities are dismissed.[4]

---

[4] Because the Court has dismissed all Defendants on other grounds, it need not fully consider whether Plaintiff states a Fourteenth Amendment claim based on the alleged provision of substandard and unhygienic food. The Court notes, however, that the Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions

11

III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims, dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, all prior complaints and filings. The amended complaint must contain *all* of the defendants, claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.[5] If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

---

which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation and quotation marks omitted). Plaintiff's allegations that he was repeatedly served undercooked, unhygienic, and contaminated food, thereby causing him illness, (Compl. 6–8), satisfy the objective prong required to state a Fourteenth Amendment conditions-of-confinement claim. *See Crispin v. Westchester County*, No. 18-CV-7561, 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (holding objective prong satisfied where the plaintiff alleged that "on at least twenty occasions, his meal tray contained raw and bloody meat," that he "was once served chili and beans that made him sick and require medical treatment," and that the inadequate food caused him to "suffer[] from nausea, diarrhea, dehydration, debilitating headaches, weight loss, hunger pangs, and fatigue"); *see also id.* at *3 n.7 (collecting cases in which "a plaintiff satisfied the objective standard of a conditions of confinement claim based on allegations concerning the food served at [Westchester County Jail]"); *Ballard v. Lane*, No. 18-CV-1721, 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12, 2019) (collecting cases for the proposition that "allegations that a prisoner was served food contaminated or tainted by foreign objects . . . are sufficient to plead a constitutional violation" (citation, quotation marks, and alterations omitted)). Indeed, allegations nearly identical to Plaintiff's claims have recently been raised in numerous other cases against Westchester County and Aramark in this District. *See Dawson*, 2019 WL 3408899, at *6 n.6 (collecting cases). The Court expects that Defendants' counsel will meaningfully address these serious allegations with their clients.

[5] As Judge Briccetti recently put it in a similar case alleging deficient food at Westchester County Jail, Plaintiff should, in amending his complaint:

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 58), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED: August 19, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

1. give the dates and times of each incident in which [he] was served the food described in his complaint;

2. describe how each defendant was involved in serving [him] such food — for example, whether the defendant personally served him that food, was present when [he] was served such food, or otherwise knew [he] was served the food;

3. describe how each defendant knew or should have known the food served to [him] was inadequate;

4. state which, if any, defendants [he] informed of the problems with his food on each such occasion, how the defendants responded to his complaints, and how the defendants' responses or lack thereof contributed to his injury;

5. include any details why [he] believes Aramark, Westchester County, or any of their employees gave him such food or failed to remedy his complaints; and

6. include any facts regarding the existence of an official Aramark or Westchester County policy or [unofficial] custom that caused the deprivation of a constitutional right.

*Crispin*, 2019 WL 2419661, at *5.